*Turner,* for appellant. . .

*Breck,* for appellee.

---

## J. W. McPHERSON *v.* H. A. TUCKER ET AL.

**Brokers—Duty to Protect Interest of Client—Actions Against.**

> Where a firm of brokers, acting on the request of their client, to replace a purchase made for him on a prior transaction, buys the commodity at the price at which it had been previously sold to protect the interest of the client, he cannot be heard to complain of a loss to him sustained thereby, although he may have repudiated the second purchase, on the day it was made.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

June 9, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Apellant sued apellees for $805.05, and alleged loss on gold, which he insists they improperly charged to him.

Defendants acknowledged an indebtedness to him of $120.46, and the jury having found a verdict for this sum only, and the court having refused to disturb the finding, and rendering judgment thereon, he prosecuted this appeal to reverse it.

Previous to March 22, 1865, appellant had deposited with appellees $1,000 in currency as margin and upon which they had purchased for him $5,000 in gold, at 215 3-4, premium.

March 10, 1865, McPherson wrote to Tucker & Co., that he supposed his margin of $1,000 was exhausted, and that A. O. & J. S. Branin, as agents for O. R. King & Co., held in Louisville $2,500, actual gold, for him, and with whom he was doing his tobacco business, and that he supposed this would be a satisfactory basis, but if not, that Messrs. King & Co. on that basis would deposit the requested amount of currency to still hold his $5,000 gold.

This letter was answered by Tucker & Co. March 22, 1865, in which they say gold is about 150 and that they had telegraphed Messrs. Branins to remit the $2,500 of gold, and in which they say "we will hold the gold as requested until you wish to sell."

Two days thereafter, however, without further advice from McPherson, but under the advice of Mr. A. O. Branin, who was acting as McPherson's agent, though engaged in some capacity in Tucker & Co. house, they sold the $5,000 of gold at 148 1-2 and advised him of the sale under same date.

Although McPherson's response of March 31st to Tucker & Co.'s letter of March 24th is not in evidence, yet it is evident from theirs to him of April 8th, that it had been received and that he complained of the sale having been made.

In this letter Tucker & Co. enter into an explanation of the reasons which prompted the sale, and which was mainly to protect his interest, and informed him that King & Co. was unwilling to release their lien upon the $2,500 gold in Messrs. Branins hands. In this they state the balance due them of $2,512.08, and propose to restore his $5,000 gold sold at the same figures, *"if the sale is not satisfactory and you will advise us by return mail."* April 15th McPherson responded, saying *"I will take back the $5000 gold sold by you for me at same rates 148 1-2 and please hold until you hear from me directing a sale."* April 19th, McPherson wrote to Mr. A. O. Branin somewhat in a spirit of complaint against King & Co. for their "tenacity in holding on" to their lien on the $2,500 gold, and also alludes to the letter offering to restore the $5,000 gold sold and professes to be satisfied as to the sale, alluding also to his letter of 15th last directing its restoration. And although he does not define Dr. Whitlock's interest in this $2,500 gold, yet he alludes to it, by way of showing he would do "nothing knowingly to affect injuriously the interest of Dr. Whitlock."

April 25th, Messrs. King & Co. wrote to McPherson, in which they propose to him to "induce Dr. W. to write us to release your gold margin and charge any deficiency in the gold account of Whitlock & McPherson to his account, or that he write to us in the name of W. & McP. for us to pay Tucker the balance you owe them." They go on to say that $2,473.50 gold, really but $2,374.50 when they come to open the bag and count it, had been placed to the credit of Whitlock & McPherson, and this is the same alluded to as being $2,500 in hands of the Messrs. Branins.

Although Dr. Whitlock's letter to Mr. A. O. Branin releasing this gold is not in the record, yet it is alluded to in the letter of May 10th, by Messrs. King & Co. to McPherson, in which they say, *"on 3 May Mr. Brannin presented Dr. Whitlock's letter of 19 April authorizing the release of your gold ..* .. * .. * .. it was paid over to H. A. Tucker & Co."*

May 3, Messrs. Tucker & Co. wrote to McPherson acknowledging the reception of his of 19 inst. (should be April) to Mr. Branin, and say *"we hand you settlement of account showing we had replaced your five thousand gold at 148 1-2."* On that very day McPherson wrote to Tucker & Co. declining to have the $5,000 of gold purchased for him. This gold was afterwards sold at 136 and produced the loss in controversy. Tucker & Co. did business in New York, whence all their correspondence. McPherson corresponded from Hopkinsville, Kentucky, letters by ordinary course of mails from one of these points to the other were from four to five days in passing. McPherson's correspondence about the same matter being with these different parties, to-wit: Tucker & Co., A. O. Branin and King & Co., makes it quite complicated, but with this chronological order of facts the question is greatly simplified.

When Tucker & Co. first proposed to restore to him the $5,000 gold sold at 148 1-2, they expected him to place with·them a sufficient margin to cover possible losses, including his arrearage, and that margin must be so placed was understood by McPherson as is evident from his letters, but he supposed the $2,500 actual gold in Messrs. Branins hands would suffice, but King & Co. had a lien upon it, which they would not release until Dr. Whitlock's letter of April 19, 1865, sent by McPherson to Branin, and which was presented to them May 3, authorized it. Tucker & Co. bought the $5,000 gold on McPherson's account the same day, and notified him by letter, and though McPherson wrote the same day declining

the purchase, yet this could not reach Tucker & Co. for four or five days. Tucker & Co. made the purchase so soon as King & Co. released the gold ordered by McPherson to be placed in their hands.

Although unfortunate, and to say the least of it, a speculation more infatuating than legitimate, and pregnant of greatly more evil than good, yet there is nothing in this case to manifest bad faith on the part of Tucker & Co. There was a small gold balance of seventy odd dollars due appellant which appellees accounted for in currency at the market rates, and for which he has judgment, and for which under the decision of this court he can coerce gold; therefore it does him no wrong.

Judgment affirmed.

*Bullock & Anderson*, for appellant.

*Cochran & Thompson*, for appellees.